MIDDLEBROOK vs AMES.

1. Under the attachment laws of this State, *absconding* within the State, is alone a sufficient ground for an attachment, whether the plaintiff or defendant, or both, be resident or non-resident within the State.
2. So, a plea, to process of attachment, *that the defendant is a resident citizen of another State, and never was within this State, with the intention of residing here,* held bad.
3. *It seems,* that a defendant in attachment, *may not,* by plea in abatement, contest the truth of the facts charged as the ground of the attachment, where the affidavit and proceedings on their face, appear regular and sufficient.

On the 13th day of December, 1830, at the County of Mobile, Barrett Ames, sued out process of attachment against the goods and effects of Samuel H. Middlebrook. The affidavit charged that the said Middlebrook did so *abscond* or secrete himself, as that the ordinary process of law could not be served, &c.

Note.—The decision in this case, appears to have been made with direct reference to the act of 1828.—That of 1833, (Aikin's Digest, 37,) seems to be very much a re-enactment and improvement of the several attachment laws of his State, without much alteration of their essential principles    It is believed, therefore, that the law, settled in this case, applies to the attachment laws now existing.   It will, also, be perceived, that a portion of the principles adverted to, in the opinion of the Court, have a tendency to overrule the case of *Brown* vs *Massey,* reported in 3d Stewart, 226.

To the declaration filed in the cause, and which contained divers counts, the defendant filed the following plea, which was sworn to, to wit : "And the said defendant comes, and in his own proper person, and for plea to the suit of the said plaintiff, saith, he now, and for the eight or more years last past, has been a resident citizen of the State of New York ; and never was in the State of Alabama, with an intention of residing therein. Wherefore, he prays judgment, that the said attachment may be quashed.

"SAMUEL H. MIDDLEBROOK,

"By J. CRANE."

To this plea the defendant in attachment demurred, which demurrer was sustained ; and judgment rendered for the plaintiff.

It was here, on writ of error, assigned, that the Court erred, in sustaining the demurrer of the plaintiff to the plea of the defendant.

*Gordon*, for the plaintiff in error—
*Stewart*, contra.

SAFFOLD, J.—Ames sued out an attachment returnable to the Circuit Court of Mobile County, against the plaintiff in error, as an absconding debtor.   The plaintiff in error filed a plea in abatement, as follows—That he, "the said defendant comes in his own proper person, and for plea to the suit of the plaintiff, saith, that he is, and for eight or more years last past, has been a resident citizen of the State of New York; and never was in the State of Alabama, with an intention of residing therein—wherefore, he prays judgment, that the said attachment may be

quashed." The plea was signed " S. H. Middlebrook, by J. Crane"—to which is subjoined the affidavit of the latter, " that the above plea is true." To this plea the plaintiff demurred, and the Court sustained the demurrer, and gave judgment for the plaintiff.

The judgment on demurrer is now assigned as the cause of error.

The plea does not purport a denial of the complaint, charged as the ground of the attachment, that the defendant had absconded; but it avers the extrinsic fact, that the defendant long has been, and still is a resident citizen of New York—resting his defence on the legal position, that non-residents, though temporarily within this State, and absconding, to evade service of the ordinary process, are not subject to the process of attachment—that the remedy, on this ground, is authorised, only against resident debtors. It is, therefore, of little importance to this suit, whether a defendant in attachment, on correct principle, can be allowed, (as in the case of *Brown* vs *Massey*,[a]) to contest, by plea in abatement, the truth of the fact sworn to, as the ground of the attachment: yet, in the course of my remarks, it will become necessary to take some notice of the principles of that, as well as other cases.

The objection to this judgment is urged mainly on the authority of a case, in the State of New York; case of *Fitzgerald*.[a] There, it is true, the Supreme Court held, that a person who has been but transiently within the State, can not be proceeded against as an absconding or concealed debtor—that such should be sued as *absent* debtors; also, that, to authorise proceedings against absent debtors, the creditor

must be a resident within the State. It is necessary, however, to observe, that the opinion of the Court, in that case, as delivered by *Livingston, J.* is clearly predicated on the peculiarities of the statute of that State. He relies upon the requisitions of the statute, that, against an absconding debtor the plaintiff must swear, among other things, "that his debtor has *departed* the State, with intent to defraud his creditors;" that the defendant is entitled to notice to *return* and pay his debts; and, that he can supersede the attachment, by giving bond, conditioned in part, that he shall prove himself *a resident within the State:* all which the judge thinks, sufficiently contemplate, that the defendant should be a resident within the State. On principle, also, he suggests, there ought to be a difference, in this respect, between resident and non-resident debtors.

Chancellor *Kent,*[a] gives to that statute the same construction; and refers, for authority, to the case above cited.

Our statute is essentially different from that of New York—nor is it necessary to inquire under which of the several acts contained in our code, this attachment was issued—none of them contain any provision similar to those referred to in the other State. It is true, that a statute of 1807, (§7,) adopted under our territorial form of government, provides, that when any person, who shall be an inhabitant of any other government, *so that he can not personally be served with process*, shall be indebted to any person, a resident of this territory, and hath any estate within the same, any of the territorial judges, or jus-

5 s. & p.       21

[a] 2 Kent's 328.

tices of the County Courts, may grant an attachment against the estate of such foreign person, under the same rules, restrictions and regulations, prescribed in other cases, and the same proceedings may be had thereon.

It is obvious, that this section authorises an attachment, on the ground, alone, of the impracticability of effecting personal service, in consequence of the non-residence of the debtor. Had that been the only ground furnished by the case, the plaintiff, to be entitled to the process of attachment, must have been a resident; but where the case also furnishes the other ground of attachment, that the defendant has absconded, so that the ordinary process can not be served, the plaintiff is not bound to rely on that of his non-residence, or take any notice of that circumstance.

Supposing the debtor to be a non-resident, but temporarily and notoriously within the State, and therefore, subject to the ordinary process, the creditor could not safely take the oath above prescribed, without explaining why he did not resort to the ordinary process: had he charged the absconding, as the cause, he would, thereby, have disclosed a different ground, which, under other statutes of this State, was, of itself, sufficient, and superseded the necessity of relying on the non-residence. This plaintiff chose to rely alone on the ground of absconding, which, we conceive, he had a clear right to do, according to the laws of this State.

Previous to the act, which will presently be noticed, several others were in force in this State, containing substantially the same provisions, as respects *abscond-*

*ing* debtors, and this was intended to consolidate and simplify the whole. It is the "act to amend the laws, in relation to original attachments," passed in January, 1828, the directions of which are that "original attachments, foreign and domestic, may be issued by judges of the Circuit and County Courts, and justices of the peace," and the same affidavit and bond shall be made before either—"That every judge or justice, before issuing an attachment shall require the party applying for the same, his agent, attorney or factor, to make affidavit in writing, that the person or persons, against whom the attachment is prayed, absconds or secretes"—resides out of, or is about to remove from the State, &c., so that the ordinary process can not be served. Thus it appears, that *absconding*, within this State, is alone a sufficient ground for an attachment, whether plaintiff or defendant, or both, be resident or non-resident within the State.— Nor do I perceive, in principle, any solid objection to this practice : if a non-resident debtor, being transiently within this State, and apprehensive of process, absconds to avoid it, there would appear no sufficient reason why he should enjoy exemption from any extraordinary remedy, to which a resident, acting in the same manner would be subject. He may be presumed to have all the facilities for obtaining notice of the levy of the attachment, that a resident, absconding in like manner, could have ; and the recovery of a just debt is the only legal consequence of the procedure, in either case.

But, whether, on abstract principle, the remedy be equally proper or not, our statute has equally sub-

jected resident and non-resident debtors to the process of attachment, for the act of *absconding*, to avoid service of the ordinary process.

As respects the decision, in the case of *Brown* vs *Massey*, which has been referred to, a majority of this Court, as at present organised, were, and still are opposed to it; nor do we think it well sustained by the authority of the case referred to, in support of it.

The case relied upon, was *Mantz* vs *Hendley*.[a]—This Court then considered the two cases precisely analagous: a slight examination of that case, will show the great dissimilarity which exists between them.

In the Virginia case, the plea in abatement averred extrinsic facts, which were not in conflict with the affidavit, and the facts recited, as the grounds of the attachment, and showed, that the grounds assumed for the attachment, if true, did not entitle the plaintiff to that remedy. The statute of Virginia required an affidavit, that the debtor was removing out of the County, privately, or had absconded or concealed himself, so that the ordinary process could not be served upon him: instead of which, the ground charged in the case cited from that State, was, that one Bacon, as attorney for Mantz, held, for the purpose of collection, a bond against Hendley, and that he *had grounds to suspect, and verily believed said Hendley intended to remove his effects, and would elude the ordinary legal process.* The plea in abatement was that the defendant was not *removing out of the County privately, nor absconded or concealed himself,* so that the ordinary process could not be served up-

[a] 2 Hen. & Munf. 312.

on him, as was alleged and complained of in said attachment. Though the plea in conclusion, refers to the proceedings, as if charging the grounds of attachment which it denies, I have shewn that it does not—that it only denies the existence of such facts as would there authorise an attachment : consequently the Court could have regarded so much of the plea as alluded to such conflict, only as surplusage. The question did not arise, whether or not it was competent for the plea, to contest the truth of the facts charged in the affidavit and warrant of attachment.

Judge *Tucker* remarked, in substance, that, as it appeared upon the face of the warrant, that neither of the grounds contemplated by the statute for an attachment was charged in the proceedings, they ought to have been quashed by the Court, *ex-officio*, upon inspection, without waiting for a plea in abatement.

Judge *Fleming* said—" The variance between the words of the law, and the ground on which the attachment is stated to have been awarded, goes to the substance as well as the form of the complaint; and therefore, it was the duty of the Court, *ex-officio* to have quashed the attachment."

Such were the views of the Court, and after an informal plea in abatement, and demurrer thereto, they held it unnecessary, to scrutinize the sufficiency of the plea—for, that an attachment, irregularly issued, ought to be quashed *ex-officio*, by the Court; though bail be not given, nor any plea filed by the defendant; and in like manner, the Court ought to quash it on errors, in arrest of judgment, after pleadings and a verdict for the plaintiff.

From this review of the case of *Mantz* vs *Hendley*, I think it sufficiently appears, that it furnishes no satisfactory authority for the decision in *Brown* vs *Massey*, which was, that a defendant in attachment, where the affidavit and proceedings appeared on their face, to be regular and sufficient, had a right, by plea in abatement, to contest the truth of the fact charged as the ground of the attachment. The two decisions stand on distinct principles, and have no legitimate connection.

The definition of a plea in abatement as quoted in one of the cases, and adopted into the other—that it is one " which shews cause to the Court why the defendant should not be impleaded, or, if impleaded, not in the manner and form he now'is," can have no material influence on the question. This definition is, in its terms, like most others, too general to determine a closely contested point; it might be applied to a special demurrer or a special plea in bar, as well as to pleas in abatement. But, a stronger objection to the use made of it, in *Mantz* vs *Hendley*, is, that it is made to assume the very principle mainly in contest—that the truth of the affidavit, charging the defendant to have absconded, is a *traversable fact*.— This was the only objection to the plea, in that case, and on this point the definition is profoundly silent; yet, it was supposed to remove all the difficuty.

The true question was; whether, in as much as the plaintiff in that attachment had made affidavit, in the manner prescribed by law, and for the truth of which, was responsible to criminal jurisdiction, and had given bond and security, to respond to the defendant in damages, if the attachment was wrong-

fully sued out, he had not a right to proceed with his suit, and obtain judgment for his debt, if legally established? The statute had declared, that on doing this, he should be entitled to the process of attachment : and in the suit in this form, he could have been required to establish the justice of his demand, by no less proof than in a suit by the ordinary process.

The principle decided in the case of *O'Neal* vs *Owens*,[a] was in direct opposition to that of *Mantz* vs *Hendley*, and so admitted in the latter case.

[a] Hayw'd N. C. Rep 365.

From this slight review of the doctrine, it appears, that the case of *Mantz* vs *Hendley*, would prove to be unsound authority; but, as the principle is not indispensable to the decision of the case under consideration, we decline the expression of any absolute opinion upon it.

It may also be remarked, that in the case of *Mantz* vs *Hendley*, the judges laid great stress on the principle which formerly prevailed in this Court, that, in the summary proceeding by attachment, unknown to the common law, the strict letter of the stautute ought to be adhered to. Our statute of January, 1828, before referred to, breathes a different principle—it provides, " that the several acts of this State, in relation to attachments, shall not be rigidly and strictly construed."

A majority of this Court are of opinion, the judgment of the Court below, rendered in this case, must be affirmed.

TAYLOR, J.—As to the form of the plea, in this case, I do not understand any objection to be insisted on. No defect can be taken notice of, which, at

common law, required a special demurrer—as, by the statute of amendments, &c. of 1824, special demurrers are stricken from our practice.

It is said, that the affidavit to the truth of the plea, is made in a manner which shakes our confidence in its truth, because it is positive, although not made by the defendant below, but a third person.

I do not think this detracts from the confidence which should be reposed in the plea, even had we to determine on its truth. No opportunity is afforded to the person making the affidavit, of showing the grounds upon which he feels authorised to swear positively; and many circumstances might have so convinced him of the truth of the plea, as to satisfy him that he was justified in making the affidavit which he has done. The only inquiry, on this subject, however, which we can make, is, does the affidavit comply with the requisitions of the act of assembly?

[a]Toul.Dig. 454. The statute,[a] declares that no plea in abatement shall be received in any Court, except accompanied with an affidavit of the truth of such plea, or the truth of it otherwise appear." It is not required, that the affidavit shall be made by the defendant. Here the truth of the plea is accompanied by an affidavit—and, surely it can not be rejected, because the truth of the plea is positively sworn to: it possibly might be, were the oath made differently.

[b]3Stewart, 226. The main question I considered to be settled by this Court, in the case of *Brown* vs *Massey*.[b] In that case a writ of attachment was sued out against Brown, as an absconding debtor, by Massey. The defendant pleaded in abatement, that he had not

absconded, which plea was demurred to, and the demurrer sustained in the Inferior Court.    This Court reversed the judgment, and  decided  that the plea constituted a good defence.

I am never disposed to depart from  former decisions of this Court, unless they are manifestly wrong, and some  important  principle is involved.    To be wavering and veering about, upon points of practice, I consider highly mischievous.   Our successors would be as much bound by the former decision, as a more recent one, overruling it; and, upon a point so unimportant as  the  one involved in this case, I consider it much more important, that the decisions should be uniform and the law settled, than how  it is settled: the  maxim *stare decisis*, I therefore, consider as determining the question, as to me.

But, as a disposition is manifested to overrule  the case of *Brown* vs *Massey*, and I am  altogether opposed to doing so, I think  it right to show, that that decision is sustained by those of some of the most respectable Courts in the United States, and the opinions of  the ablest  jurists.

In  the  case of *Mantz* vs *Hendley*, that very talented  and able jurist, Judge *Roane*,  said—" There are  two  kinds  of  causes, for  which a writ, (and a *fortiori* an attachment,) may be abated ; the one *dehors* the writ or attachment, and the other instrinsic."

The matter stated in the plea demurred to in the present case, is of the former kind.   The plea alleged,  in  substance, that the defendant was not removing, as charged in the attachment, and the opinion of Judge *Roane*, and the other judges, sustains it, as a va

5 s & p.                    22

[a] 2 Caine's Rep, 318. lid plea.—See, also, the case of *Fitzgerald*,[a] in which the same doctrine is maintained.

The attachment laws of New York, so far as respects this inquiry, appear to be similar to our own. Chancellor *Kent*, (in the second volume of his Commentaries, page 328,) uses the following language: " The act says, that a debtor, who resides out of the State, shall be proceeded against, as an absent debtor ;" (the Alabama laws use the term, non-resident debtor,) and, if a debtor, who resides abroad, was to come transiently into the State, without the *animus manendi*, and, while here, should conceal himself, to avoid arrest, he is to be deemed an absent debtor ; and the charge of an absconding, or concealed debtor, will not lie against any person, whose domicil is not established here."

Nothing could be more perfectly in point, than this extract : the present case, as stated in the plea, and admitted by the demurrer, is precisely such an one. And, indeed, the effect of a different course of decision will enable a plaintiff either to sue out an attachment against a non-resident, as an absconding debtor, or not, as he chooses ; and would, under a peculiarity in the provisions in our law, by which the replevy bond, where the attachment is against an absconding debtor, is for the return of the property, and not an ordinary bail bond, present strong inducements to adopt the latter course.

Nor can I see the injury, which is to result from confining creditors to one mode. The law is equally open to them, and their debts, except that the property attached may be replevied by a bail bond, equally secure.

It is also worthy of serious consideration, if another effect would not be produced, by the attachment going against the defendant as an absconding debtor, instead of a non-resident. In the latter case, the judgment would be *in rem* only, subjecting the property levied on to its satisfaction—at least, it would be so considered out of the State—and would leave him in a very different situation, in contesting the claim of the plaintiff, for any unsatisfied balance of his claim, when suit should be brought against him, in the State of his residence. If sued here, as an absconding debtor, he would have to prove, in the subsequent suit, that he did not reside in this State, when the suit was brought, to prevent the judgment from having the same effect in another State, as in this : not so, if sued as a non-resident—then, the proceedings themselves, would show this fact.

I think the judgment should be affirmed.